# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

Case No. 17-61019-Civ-WILLIAMS/TORRES

ARTURO RUBINSTEIN, *et al.*,

    Plaintiffs,

v.

THE KESHET INTER VIVOS TRUST, *et al.*,

    Defendants.

_____/

## ORDER ON PLAINTIFFS' MOTION TO STRIKE DEFENDANTS' EXPERT WITNESS F. HARLEY NORWITCH AND EXPERT OPINION/REPORT

This matter is before the Court on Arturo Rubinstein's ("Mr. Rubinstein"), Fab Rock Investments, LLC's ("Fab Rock"), and Oceanside Mile, LLC's ("Oceanside") (collectively, "Plaintiffs") motion to strike an expert witness. [D.E. 193]. Keshnet Inter Vivos Trust's (the "Trust"), Yoram Yehuda's ("Mr. Yehuda"), Sharona Yehuda's ("Mrs. Yehuda") (collectively, the "Yehudas"), Karin Yehuda's, the Mayo Group, LLC's, Mazliach Gamliel's, Eyal Gamliel's, Yoram Eliyahu's, Mike Sedaghati's, Bridge to the Future, LLC's, and Orit Maimon's (collectively, "Defendants") responded to Plaintiffs' motion on November 26, 2018. [D.E. 213] to which Plaintiffs replied on December 3, 2018. [D.E. 222]. Therefore, Plaintiffs' motion is now ripe for disposition. After careful consideration of the motion, response, reply, relevant authority, and for the reasons discussed below, Plaintiffs' motion is **DENIED**.

## I. BACKGROUND

Plaintiffs filed this action on May 22, 2017 and alleged the following claims: federal and Florida RICO violations, tortious interference, unjust enrichment conversion, rescission, quiet title, and injunctive relief. [D.E. 1]. This case relates to a Florida Limited Liability Company named Oceanside that was formed in 2006. Mrs. Yehuda and her husband Mr. Yehuda were Oceanside's two founding members. Oceanside's purpose was to purchase, renovate, and operate the Sea Bonay Beach Resort, a hotel located in Broward County, Florida (the "Hotel Property"). The Yehudas transferred their interests in Oceanside to the Trust, and, in 2007, 49.5% of Oceanside's equity was sold to other individuals/entities.

In January 2012 – in an effort to avoid foreclosure – the Yehudas enlisted the help of Mr. Rubinstein in offering his personal guaranty to Oceanside's lender so that it would extend the maturity date of a loan. Mr. Rubenstein apparently never gave a personal guaranty to Oceanside's lender, as the lender refused to extend the loan's maturity date. Nevertheless, the Trust gratuitously assigned all of its interest in Oceanside to Fab Rock, and Fab Rock was designated as Oceanside's managing member.[1]

Notwithstanding these transfers, Plaintiffs allowed the Yehudas to continue their management of the day to day operations of the Hotel Property. In 2013, Oceanside filed for bankruptcy, but recovered with the help of a multi-million dollar loan from Stonegate Bank and payments from Fab Rock. Shortly thereafter, the

---

[1] Plaintiffs allege that Mr. Rubinstein was always the managing member of Fab Rock and Oceanside.

2

Yehudas began attempts to secretly seize control of Oceanside from Fab Rock. Plaintiffs claim that the Yehudas forged Mr. Rubinstein's signature on an agreement regarding the assignment of the Trust's interest in Oceanside to Fab Rock and an amendment to that agreement granting the Trust an option to reacquire that interest from Fab Rock. Mrs. Yehuda disputes this contention and claims that she properly exercised the option agreement by delivering written notice to Mr. Rubinstein in December 2015.

In June 2016, Plaintiffs uncovered certain improprieties about the Yehudas' management of the Hotel Property. Plaintiffs demanded that the Yehudas turn over management and operation of the Hotel Property to Mr. Rubinstein. The Yehudas refused. In August 2016, Oceanside filed a lawsuit in California to remove the Yehudas from managing and operating the Hotel Property, alleging that the Yehudas: (1) misappropriated Oceanside's hotel proceeds, (2) created an entity to seize control of Oceanside and to convince third parties that the Yehudas were the managing members of Oceanside, and (3) entered into transactions on behalf of Oceanside without its knowledge or consent. In their defense, the Yehudas argue that Fab Rock had no interest in Oceanside because the Trust exercised its option to reacquire all of Fab Rock's interest in Oceanside.

On April 28, 2017, the buyers purchased the Hotel Property from Oceanside for $13.5 million, pursuant to a warranty deed that was recorded in Broward County's public records on May 1, 2017. Mrs. Yehuda signed the deed as the sole manager of Oceanside. On the date of the sale, the Department's records reflected

3

that Mrs. Yehuda was Oceanside's sole manager. Prior to the sale, Mrs. Yehuda also executed an affidavit in connection with the closing – swearing (1) that she was Oceanside's sole manager, (2) that she was authorized to execute deeds and other documents necessary to convey real property on Oceanside's behalf, and (3) that all the prerequisites needed to authorize the Hotel Property's sale had been effectuated. After Plaintiffs learned of the transaction, they sued.

## II. *APPLICABLE LEGAL PRINCIPLES AND LAW*

Under Federal Rule of Civil Procedure 26(a), a party must provide an expert witness report for an expert witness who is retained or specially employed to give expert testimony and who the party may use at trial. *See* Fed. R. Civ. P. 26(a)(2). The disclosures must be made "at the time and in the sequence that the court orders." Fed. R. Civ. P. 26(a)(2)(D). The disclosure requirements are "intended to provide opposing parties reasonable opportunity to prepare for effective cross examination and perhaps arrange for expert testimony of other witnesses." *Reese v. Herbert*, 527 F.3d 1253, 1265 (11th Cir. 2008) (internal quotation marks omitted).

Excluding expert testimony is a drastic sanction requiring careful consideration. *See Brooks v. United States*, 837 F.2d 958, 961 (11th Cir. 1988) (finding that the district court abused its discretion by refusing to admit expert testimony because that sanction was too drastic, neither party cited authority in motions, judge gave no reason, and there was no indication that the court considered a less severe sanction); *In re Complaint of Fantome, S.A.*, 2004 WL 5642418, at *1 (S.D. Fla. Dec. 7, 2004) (refusing to impose "the extreme remedy" of

excluding untimely expert report because movants had the expert report for more than two months before the expert's deposition). The non–disclosing party must establish the failure to disclose was substantially justified or harmless. See *Mitchell v. Ford Motor Co.*, 318 F. App'x 821, 825 (11th Cir. 2009).

Whether failure to make sufficient expert disclosures is substantially justified or harmless depends on many factors: "(1) the surprise to the party against whom the evidence would be offered; (2) the ability of that party to cure the surprise; (3) the extent to which allowing the evidence would disrupt the trial; (4) the importance of the evidence; and (5) the nondisclosing party's explanation for its failure to disclose the evidence." *Mobile Shelter Sys. USA, Inc. v. Grate Pallet Sols., LLC*, 845 F. Supp. 2d 1241, 1250–51 (M.D. Fla. 2012). Sanctions may be warranted if a delayed disclosure deprives a party of the ability to disclose a rebuttal expert, impairs its ability to effectively cross examine the expert at his deposition, changes the scope of the claims, or is part of a pattern of "last minute filings and disclosures" that "have greatly affected the orderly handling of th[e] case." *Id.* at 1251–52.

A failure to timely make required disclosures might be harmless if substantially similar evidence has already been produced, *see Miele v. Certain Underwriters at Lloyd's of London*, 559 F. App'x 858, 861–62 (11th Cir. 2014) (affirming denial of motion to strike expert's untimely declaration because expert's report was "materially similar" to declaration and contained same conclusions); *Taylor v. TECO Barge Line, Inc.*, 517 F.3d 372, 380 (6th Cir. 2008) (failure to disclose photographs harmless because similar photographs had

5

been disclosed), or if the expert has already been questioned by the opposing party about the information untimely disclosed, *see Jackson v. Allstate Ins. Co.*, 785 F.3d 1193, 1204 (8th Cir. 2015) (inclusion of new information in supplemental expert report harmless because expert was questioned extensively about information at deposition); *Muldrow ex rel. Estate of Muldrow v. Re–Direct, Inc.*, 493 F.3d 160, 167–68 (D.C. Cir. 2007) (alleged failure to disclose expert testimony harmless because subject arose during deposition and testimony was elaboration on expert report); *Smith v. Tenet Healthsystem SL, Inc.*, 436 F.3d 879, 889 (8th Cir. 2006) (expert's reliance on x-rays not included in report harmless because expert discussed them at deposition).

## III. ANALYSIS

On January 12, 2018, the Court entered a Scheduling Order [D.E. 108] requiring Defendants to disclose all experts on or before July 6, 2018 and all rebuttal experts on or before July 20, 2018. On June 26, 2018, the parties filed a joint motion to modify and extend the deadline for Defendants' expert disclosures through September 14, 2018 and rebuttal expert disclosures through September 28, 2018. The Court granted the motion on July 3, 2018 with the caveat that no further extensions would be granted. [D.E. 142].

On September 7, 2018, Plaintiffs disclosed the expert report of Michael Wakshull ("Mr. Wakshull") that detailed his expert qualifications, methodology for examination, results, and opinions. Defendants requested a three-week extension to disclose their rebuttal expert and Plaintiffs agreed as a matter of professional

6

courtesy. Defendants subsequently filed an unopposed motion to extend the expert disclosure deadline. [D.E. 178]. The Court granted the motion and gave Defendants through October 5, 2018 to disclose all expert witnesses and until October 19, 2018 to disclose all rebuttal experts.

On October 12, 2018, the Court conducted a discovery hearing on Plaintiffs' motion for an *in-camera* review and production of documents reflecting communications between Mr. Braverman and the Yehudas based on the crime fraud exception to the attorney-client privilege. At the end of the hearing, the Court directed Plaintiffs to submit by October 19, 2018 a memorandum with supporting evidence in support of their position. The Court also directed the Defendants to submit within one week thereafter evidence in rebuttal. The Court stated that if it finds evidence of fraud, or conversely, no evidence of fraud, it would issue a ruling accordingly.

Plaintiffs timely submitted their memorandum on October 19, 2018 with arguments that Defendants forged Mr. Rubinstein's signature on two legal documents. Plaintiffs relied, in part, on the expert opinion of Mr. Wakshull who opined that there exists a strong probability that a document with the alleged signature of Mr. Rubinstein was not his own. On October 25, 2018 – a day before Defendants were scheduled to respond to Plaintiffs' memorandum – Defendants requested a one-week extension of time to submit their response because of the many depositions that were scheduled that week. Plaintiffs had no objection to Defendants' request and therefore Defendants filed a motion for extension of time to

7

respond by November 2, 2018. [D.E. 205]. However, before Defendants submitted their response, they served Plaintiffs with a rebuttal expert report on October 26, 2018 and Defendants used the opinions in that report in their response to Plaintiffs' memorandum. Because Defendants did not obtain an extension of time to submit a rebuttal report, Plaintiffs claim that the report is untimely and that it must be stricken from the record.

Plaintiffs argue that Defendants' failure to timely disclose Mr. Norwitch requires that Defendant be precluded from using his report in any motion, hearing, or trial in this case. Plaintiffs suggest that Defendants offer no persuasive reason for their failure to meet the deadlines in this case notwithstanding the fact that the time to disclose had passed. Plaintiffs also claim that Defendants' delay is prejudicial because it was served one week after Plaintiffs' memorandum on the forgery question and prevented Plaintiffs from addressing the merits of Mr. Norwitch's expert report. Because Defendants' rebuttal expert was submitted after the court-ordered deadline of October 19, 2018, Plaintiffs conclude that it must be stricken and that Defendants must be precluded from using it in this case.[2]

In sum, Plaintiffs believe that Defendants' late disclosure was harmful because Defendants used the rebuttal report of Mr. Norwitch (1) to create an issue of fact regarding the authenticity of Mr. Rubinstein's signature on Plaintiffs' motion for an *in-camera* inspection that did not otherwise exist, and (2) to prevent

---

[2] Plaintiffs explain that Defendants have a pattern of delay, missed deadlines, requests for postponement, and indifference towards meeting the deadlines in the Court's Scheduling Order.

Plaintiffs from addressing the contents of Mr. Norwitch's expert report in their written submission on the issue.

Defendants' response is that the disclosure of the rebuttal report is harmless because it was submitted a mere seven days after it was due and a full month prior to the close of discovery on November 30, 2018. Defendants claim that they advised Plaintiffs that Mr. Norwitch was available for deposition during the week of November 5, 2018 and that Defendants were willing to produce him after the close of discovery (which passed on November 30, 2018) to alleviate any potential prejudice. Defendants also take issue with Plaintiffs' argument that the latter was deprived of the opportunity to address the contents of Mr. Norwitch's rebuttal report on the pending discovery matter regarding the crime-fraud exception. Defendants argue that Plaintiffs' memorandum on the crime-fraud exception was due on October 19, 2018 – the same day as the Court's deadline to disclose rebuttal expert opinions. Therefore, Defendants conclude that only under a hypothetical circumstance where the parties' deadline to submit rebuttal expert reports was set in advance of the October 19, 2018 deadline would Plaintiffs' claim of prejudice have any merit.

There is no dispute between the parties that Defendants failed to submit a timely expert rebuttal report. The only issue is whether a seven-day delay in its disclosure was substantially justified or harmless. If so, Defendants' late disclosure may be excused. Here, Plaintiffs argue that they agreed to provide Defendants one additional week for Defendants to file a response to Plaintiffs' memorandum on the

issue of the crime-fraud exception. However, Plaintiffs claim that they were prejudiced when Defendants submitted an untimely rebuttal report on October 26, 2018 and then relied on it in their opposition. Plaintiffs' argument, however, rings hollow because on November 19, 2018, we granted Plaintiffs' motion for an *in-camera* inspection on the communications between Mr. Braverman and the Yehudas. [D.E. 205]. This means, that Defendants' rebuttal report did not create an issue of fact regarding the authenticity of Mr. Rubinstein's signature. And while Plaintiffs complain that they did not have the opportunity to address the contents of the rebuttal report, that argument also misses the mark because we already found that Plaintiffs made a *prima facie* showing that the crime-fraud exception may apply. In other words, Plaintiffs prevailed on their motion for an *in-camera* review despite Defendants' untimely submission of the rebuttal expert report.

We are also unconvinced that Plaintiffs have suffered any harm or prejudice because Defendants disclosed Mr. Norwitch (1) a mere seven days after the Court's deadline to do so, (2) prior to the deadlines for dispositive motions, and (3) approximately three months prior to trial. *See, e.g., Fox v. Safeco Ins. Co. of Illinois*, 2017 WL 3537593, at *4 (M.D. Fla. Aug. 17, 2017) ("[T]he Court finds Defendant's untimely disclosure of Mr. England's report was harmless. Mr. England's July 6 report was produced one week after the Court's deadline. Plaintiffs were in possession of Mr. England's report prior to the deadlines for dispositive and *Daubert* motions. Further, the report was disclosed three months prior to trial.") (internal citations omitted). Striking an expert – which is widely regarded

10

as a drastic remedy – is also unwarranted because Defendants have agreed to produce Mr. Norwitch after the discovery deadline to cure any other prejudice that may exist. *See Lake v. Tenneco, Inc.*, 2007 WL 5339379, at *1 (M.D. Fla. July 19, 2007). Because Plaintiffs prevailed on the underlying motion for an *in-camera* inspection, they have not been harmed or prejudiced on the question of whether the crime-fraud exception applies and therefore the motion to strike Mr. Norwitch is **DENIED**.

## IV. CONCLUSION

For the foregoing reasons, it is hereby **ORDERED AND ADJUDGED** that Plaintiffs' motion to strike is **DENIED**. [D.E. 193].

**DONE AND ORDERED** in Chambers at Miami, Florida, this 10th day of December, 2018.

/s/ *Edwin G. Torres*
EDWIN G. TORRES
United States Magistrate Judge