UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 17-61019-Civ-WILLIAMS/TORRES

ARTURO RUBINSTEIN, *et al.*,

    Plaintiffs,

v.

THE KESHET INTER VIVOS TRUST, *et al.*,

    Defendants.

_____/

## ORDER ON NON-PARTY ART DECK'S
## MOTION TO QUASH AND FOR PROTECTIVE ORDER

This matter is before the Court on non-party, Art Deck, Inc.'s ("Art Deck") motion to quash subpoenas that the Keshet Inter Vivos Trust (the "Trust"), Yoram Yehuda ("Mr. Yehuda"), and Sharona Yehuda ("Mrs. Yehuda") (collectively, "Defendants") served on Art Deck's financial institutions, EH Bank and Union Bank (the "Banks"). [D.E. 225]. Defendants responded to Art Deck's motion on December 19, 2018 [D.E. 241] to which Art Deck did not reply. Therefore, Art Deck's motion is now ripe for disposition. After careful consideration of the motions, response, relevant authority, and for the reasons discussed below, Art Deck's motion is **DENIED**.

### *I.     BACKGROUND*

Arturo Rubinstein ("Mr. Rubinstein"), Fab Rock Investments, LLC's ("Fab Rock"), and Oceanside Mile, LLC's ("Oceanside") (collectively, "Plaintiffs") filed this

1

action on May 22, 2017 and alleged the following claims: federal and Florida RICO violations, tortious interference, unjust enrichment conversion, rescission, quiet title, and injunctive relief. [D.E. 1]. This case relates to a Florida Limited Liability Company named Oceanside that was formed in 2006. Mrs. Yehuda and her husband Mr. Yehuda were Oceanside's two founding members. Oceanside's purpose was to purchase, renovate, and operate the Sea Bonay Beach Resort, a hotel located in Broward County, Florida (the "Hotel Property"). The Yehudas transferred their interests in Oceanside to the Trust, and, in 2007, 49.5% of Oceanside's equity was sold to other individuals/entities.

In January 2012 – to avoid foreclosure – the Yehudas enlisted the help of Mr. Rubinstein in offering his personal guaranty to Oceanside's lender so that it would extend the maturity date of a loan. Mr. Rubenstein apparently never gave a personal guaranty to Oceanside's lender, as the lender refused to extend the loan's maturity date. Nevertheless, the Trust gratuitously assigned all of its interest in Oceanside to Fab Rock, and Fab Rock was designated as Oceanside's managing member.[1]

Notwithstanding these transfers, Plaintiffs allowed the Yehudas to continue their management of the day to day operations of the Hotel Property. In 2013, Oceanside filed for bankruptcy, but recovered with the help of a multi-million-dollar loan from Stonegate Bank and payments from Fab Rock. Shortly thereafter, the Yehudas began attempts to secretly seize control of Oceanside from Fab Rock.

---

[1] Plaintiffs allege that Mr. Rubinstein was always the managing member of Fab Rock and Oceanside.

Plaintiffs claim that the Yehudas forged Mr. Rubinstein's signature on an agreement regarding the assignment of the Trust's interest in Oceanside to Fab Rock and an amendment to that agreement granting the Trust an option to reacquire that interest from Fab Rock. Mrs. Yehuda disputes this contention and claims that she properly exercised the option agreement by delivering written notice to Mr. Rubinstein in December 2015.

In June 2016, Plaintiffs uncovered certain improprieties about the Yehudas' management of the Hotel Property. Plaintiffs demanded that the Yehudas turn over management and operation of the Hotel Property to Mr. Rubinstein. The Yehudas refused. In August 2016, Oceanside filed a lawsuit in California to remove the Yehudas from managing and operating the Hotel Property, alleging that the Yehudas: (1) misappropriated Oceanside's hotel proceeds, (2) created an entity to seize control of Oceanside and to convince third parties that the Yehudas were the managing members of Oceanside, and (3) entered into transactions on behalf of Oceanside without its knowledge or consent. In their defense, the Yehudas argue that Fab Rock had no interest in Oceanside because the Trust exercised its option to reacquire all of Fab Rock's interest in Oceanside.

On April 28, 2017, the buyers purchased the Hotel Property from Oceanside for $13.5 million, pursuant to a warranty deed that was recorded in Broward County's public records on May 1, 2017. Mrs. Yehuda signed the deed as the sole manager of Oceanside. On the date of the sale, the Department's records reflected that Mrs. Yehuda was Oceanside's sole manager. Prior to the sale, Mrs. Yehuda

also executed an affidavit in connection with the closing – swearing (1) that she was Oceanside's sole manager, (2) that she was authorized to execute deeds and other documents necessary to convey real property on Oceanside's behalf, and (3) that all the prerequisites needed to authorize the Hotel Property's sale had been effectuated. After Plaintiffs learned of the transaction, they sued.

## II. APPLICABLE PRINCIPLES AND LAW

Federal Rule of Civil Procedure 45 provides that a subpoena must be modified or quashed if it "requires disclosure of privileged or other protected matter" or "subjects a person to [an] undue burden." Fed. R. Civ. P. 45(c)(3); *see also Wiwa v. Royal Dutch Petroleum Co.*, 392 F.3d 812, 817–18 (5th Cir. 2004) ("Under Federal Rule of Civil Procedure 45, a court may quash or modify a subpoena if it (1) fails to allow a reasonable time for compliance; (2) requires a person who is not a party to travel more than 100 miles from where the person resides; (3) requires disclosure of privileged or protected matter; or (4) subjects a person to undue burden.") (footnote omitted). "Whether a burdensome subpoena is reasonable 'must be determined according to the facts of the case,' such as the party's need for the documents and the nature and importance of the litigation." *Wiwa*, 392 F.3d 818 (quoting *Linder v. Dep't of Def.*, 133 F.3d 17, 24 (D.C. Cir. 1998)).

To determine whether a subpoena imposes an undue burden, courts must consider at least six factors:

> (1) [the] relevance of the information requested; (2) the need of the party for the documents; (3) the breadth of the document request; (4) the time period covered by the request; (5) the particularity with which the party describes the requested documents; and (6) the burden imposed. Further, if the person to whom the document request is made is a non-party, the court may also consider the expense and inconvenience to the non-party.

*Wiwa*, 392 F.3d at 818. As part of this inquiry, "[a] trial court has broad, but not unlimited, discretion in evaluating the circumstances of a case when considering quashing a subpoena on grounds of oppressiveness. It must carefully examine the circumstances presented to it and, when appropriate, consider the possibility of modifying the subpoena rather than quashing." *Northrop Corp. v. McDonnell Douglas Corp.*, 751 F.2d 395, 403 (D.C. Cir. 1984).

"Rule 26(c) allows the issuance of a protective order if 'good cause' is shown. In addition to requiring good cause, this circuit has also required the district court to balance the interests of those requesting the order. A 'district court must articulate its reasons for granting a protective order sufficient for appellate review.'" *McCarthy v. Barnett Bank of Polk Cty.*, 876 F.2d 89, 91 (11th Cir. 1989) (citations omitted); *see also Auto-Owners Ins. Co. v. Southeast Floating Docks, Inc.*, 231 F.R.D. 426, 429–30 (M.D. Fla. 2005) ("Rule 26(c) provides that upon a showing of good cause, a court 'may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense.' The party seeking a protective order has the burden to demonstrate good cause, and must make 'a particular and specific demonstration of fact as distinguished from

5

stereotyped and conclusory statements' supporting the need for a protective order.") (citations omitted).

"A non-party seeking a protective order has the initial burden of showing that the information sought is confidential and that the disclosure of that information might be harmful. Once the non-party has established both prongs, the party seeking to compel the disclosure must show that the discovery sought is both relevant to the pending action and necessary." *Coty Inc. v. C Lenu, Inc.*, 2010 WL 5392887, at *3 (S.D. Fla. Dec. 22, 2010) (citing *American Standard, Inc. v. Humphrey,* 2007 WL 1186654, at *2–3 (M.D. Fla. Apr.19, 2007) (noting that "the party resisting discovery . . . has the burden to show that the information sought by [the p]laintiff is confidential and that disclosure would be harmful" and that "[o]nly after such a showing is made does the burden shift to the party seeking the discovery to show the information sought is relevant and necessary.")) (citations omitted).

It is well settled that "[t]he litigant seeking the protective order must articulate the injury with specificity." *United States v. Dentsply Int'l, Inc.*, 187 F.R.D. 152, 158 (D. Del. 1999) (citations omitted*); see also United States v. Garrett,* 571 F.2d 1323, 1326 n. 3 (5th Cir. 1978) (finding that a party seeking a protective order must show not just speculative harm but must make a "particular and specific demonstration of fact as distinguished from stereotyped and conclusory statements") (citations omitted); *see also United States v. Dentsply Int'l, Inc.,* 187 F.R.D. at 158 ("'Broad allegations of harm, unsubstantiated by specific examples,'

do not support a showing for good cause.") (quoting *Cipollone v. Liggett Group, Inc.*, 785 F.2d 1108, 1121 (3d Cir. 1986)). "In other words, the party seeking the protective order must show good cause by demonstrating a particular need for protection" because "[b]road allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not satisfy the Rule 26(c) test." *Trinos v. Quality Staffing Servs. Corp.*, 250 F.R.D. 696, 698 (S.D. Fla. 2008) (citing *Cipollone v. Liggett Group, Inc.,* 785 F.2d 1108, 1121 (3d Cir. 1986)); *see also Gen. Dynamics Corp. v. Selb Mfg. Corp.,* 481 F.2d 1204, 1212 (8th Cir. 1973).

### III. ANALYSIS

On November 21, 2018, Defendants served a notice of intent to serve subpoenas seeking financial records relating to Art Deck from the Banks. The subpoenas contained two separate requests for productions:

> All bank account statements, unredacted incoming and outgoing wire transfer records, deposit records, and copies of unredacted incoming and outgoing checks from the time period dating from 01-01-2014 through 12-31-2016 for Union Bank Account No. XXXXXX09621, held in the name of Art Deck, Inc. The subpoenaing party believes that the branch associated with the account holder is located in Panorama City, California (PO Box 512380, Los Angeles); and

> All bank account statements, unredacted incoming and outgoing wire transfer records, deposit records, and copies of unredacted incoming and outgoing checks from the time period dating from 01-01-2014 through 12-31-2016 for EH National Bank Account No. XXXXXX2, held in the name of Art Deck, Inc. The subpoenaing party believes that the branch associated with the account holder is presently located at 8484 Wilshire Blvd, Suite 100, Beverly Hills, CA 90211.

[D.E. 225].

7

Art Deck claims that the subpoenas are improper for several reasons. First, Art Deck argues that the deadline for compliance in the subpoenas (December 5, 2018) is untimely under the Court's Local Rules and the Court's amended scheduling order. Pursuant to Local Rule 26.1(d) "subpoenas seeking the production of documents must be served in sufficient time that the response is due on or before the discovery cutoff date." S.D.L.R. 26.1(d). The subpoenas in this case were served on November 21, 2018 and provided a document production deadline of December 5, 2018. However, Art Deck states that the Court's amended scheduling order provided a discovery cutoff date of November 30, 2018 – meaning that the documents sought were due *after* the discovery deadline. Because Defendants violated the Local Rules, Art Deck concludes that the subpoenas are defective.

Second, Art Deck argues that the subpoenas are improper because they seek confidential financial records that are protected under Florida's constitutional right of privacy. Art Deck is concerned that its personal and confidential financial data is at risk of being disclosed for no compelling reason and that this may affect the information of its clients. And third, Art Deck claims that the subpoenas are not limited in scope and that it enables Defendants to rummage through sensitive confidential information to annoy and harass Art Deck.

Art Deck's initial argument – that the subpoenas run afoul of the Court's Local Rules and the Court's scheduling order – misses the mark because it is a moot point. Art Deck claims that Defendants violated the Local Rules because the discovery cutoff passed on November 30, 2018 and that the documents requested

8

included a production date of December 5, 2018. It is certainly true that subpoenas seeking the production of documents must be served so that a response is due on or before the discovery cutoff date. And it is also true that the Banks were not required to respond to the subpoenas because Defendants would have been unable to compel compliance under the Court's Local Rules. *See Lira v. Arrow Air, Inc.*, 2007 WL 188163, at *2 (S.D. Fla. Jan. 22, 2007) (refusing to compel defendant to produce witnesses for additional discovery after the close of the discovery period). But, the Banks timely responded to the subpoenas with their production of documents and neither objected to nor moved for a protective order. That is, while the subpoenas ran afoul of the Court's Local Rules, the Banks complied with the production request notwithstanding their right to refuse Defendants' request. Because this issue is now moot, Art Deck's argument lacks merit.[2]

Art Deck's second argument– that Florida's right to privacy forecloses the discovery sought – is misplaced because it is well settled that "an organization or corporate entity has no personal right to privacy under Florida law" as "only living individuals have a personal right to privacy under Florida law." *Joe Ervin's Fitness Clubs, Inc. v. United Nat'l Ins. Co.*, 2007 WL 9698317, at *4 (S.D. Fla. July 25, 2007), *Report and Recommendation adopted*, 2007 WL 9698318 (S.D. Fla. Aug. 10, 2007). Art Deck's related contention – that the subpoenas improperly targeted its clients – is also feeble because Art Deck fails to explain how bank

---

[2] Even if the Banks had refused to produce documents and objected to the subpoenas, this may not have undermined the validity of the subpoenas given the importance of the documents requested and the small amount of time that passed after the discovery cutoff.

9

statements reflect confidential client information. In other words, Art Deck never clarifies how the information contained in the bank statements reflects information about its clients. Because these arguments are unclear and conclusory, they lack merit.

Art Deck's final argument is that the subpoenas should be quashed because it subjects Art Deck to annoyance and harassment. Art Deck's contention is unpersuasive because it relies on boilerplate objections. And "[b]y presenting boilerplate objections, [Art Deck] fails to provide the Court with any details on how the subpoena[s] [are] improper or how [they] appl[y] to the items requested." *Ctr. for Individual Rights v. Chevaldina*, 2017 WL 5905191, at *5 (S.D. Fla. Nov. 29, 2017) (citing *Miccosukee Tribe of Indians of Florida*, 2013 WL 10740706, at *2 (S.D. Fla. June 28, 2013) ("Specificity is required in objections because without it both the requesting party and the Court lacks sufficient information to understand the scope of the objection, and to fairly consider whether the objection has merit."); *Pepperwood of Naples Condo. Ass'n, Inc. v. Nationwide Mut. Fire Ins. Co.*, 2011 WL 3841557, at *3 (M.D. Fla. Aug. 29, 2011) ("Defendant must state specific grounds for each objection."); *U.S.C.F.T.C. v. Am. Derivatives Corp.*, 2007 WL 1020838, at *3 (N.D. Ga. Mar. 30, 2007) ("Merely stating that a discovery request is vague or ambiguous, without specifically stating how it is so, is not a legitimate objection to discovery.")).

Setting aside that problem, the documents sought are highly relevant because they relate to Mr. Rubinstein's testimony in this case. Mr. Rubinstein

testified that he contributed considerable sums of money to Oceanside under the assumption that he was Oceanside's majority owner. This includes a $500,000 contribution made to pay down the original loan on the hotel. Mr. Rubinstein also testified that the $500,000 payment came from a loan received from Mr. Schatzky in March 2014. Mr. Rubinstein claims that over the course of several months, he repaid Mr. Schatzky and that the source of this money was from Art Deck. In other words, Mr. Rubinstein testified that he used income from Art Deck to repay a $500,000 loan at the center of this litigation. Because the documents sought are relevant to the issues presented, Art Deck's motion to quash and motion for protective order must be **DENIED**.

## IV. CONCLUSION

For the foregoing reasons, it is hereby **ORDERED AND ADJUDGED** that Art Deck's motion to quash and motion for a protective order are **DENIED**.

**DONE AND ORDERED** in Chambers at Miami, Florida, this 11th day of January, 2019.

/s/ *Edwin G. Torres*
EDWIN G. TORRES
United States Magistrate Judge