# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

Case No. 17-61019-Civ-WILLIAMS/TORRES

ARTURO RUBINSTEIN, *et al.*,

    Plaintiffs,

v.

THE KESHET INTER VIVOS TRUST, *et al.*,

    Defendants.

_____/

## ORDER ON THE OWNERS' MOTION TO STRIKE

This matter is before the Court on BNH IV HM TRI LLC'S and 1159 Hillsboro Mile LLC's (collectively, the "Owners") motion to strike Arturo Rubinstein's, Fab Rock Investments, LLC's, and Oceanside Mile LLC's (collectively, "Plaintiffs") affirmative defenses to the Owners' counterclaims. [D.E. 387]. Plaintiffs responded to the Owners' motion on April 22, 2019 [D.E. 393] to which the Owners' replied on April 29, 2019. [D.E. 395]. Therefore, the Owners' motion is now ripe for disposition. After careful consideration of the motion, response, reply, and relevant authority, and for the reasons discussed below, the Owners' motion to strike is **GRANTED in part** and **DENIED in part**.

## I. BACKGROUND

Plaintiffs filed this action on May 22, 2017 and alleged the following claims: federal and Florida RICO violations, tortious interference, unjust enrichment conversion, rescission, quiet title, and injunctive relief. [D.E. 1]. This case relates to a Florida Limited Liability Company named Oceanside that was formed in 2006. Mrs. Yehuda and her husband Mr. Yehuda were Oceanside's two founding members. Oceanside's purpose was to purchase, renovate, and operate the Sea Bonay Beach Resort, a hotel located in Broward County, Florida (the "Hotel Property"). The Yehudas transferred their interests in Oceanside to the Trust, and, in 2007, 49.5% of Oceanside's equity was sold to other individuals/entities.

In January 2012 – to avoid foreclosure – the Yehudas enlisted the help of Mr. Rubinstein in offering his personal guaranty to Oceanside's lender so that it would extend the maturity date of a loan. Mr. Rubenstein apparently never gave a personal guaranty to Oceanside's lender, as the lender refused to extend the loan's maturity date. Nevertheless, the Trust gratuitously assigned all of its interest in Oceanside to Fab Rock, and Fab Rock was designated as Oceanside's managing member.[1]

Notwithstanding these transfers, Plaintiffs allowed the Yehudas to continue their management of the day to day operations of the Hotel Property. In 2013, Oceanside filed for bankruptcy, but recovered with the help of a multi-million-dollar loan from Stonegate Bank and payments from Fab Rock. Shortly thereafter, the

---

[1] Plaintiffs allege that Mr. Rubinstein was always the managing member of Fab Rock and Oceanside.

Yehudas began attempts to secretly seize control of Oceanside from Fab Rock. Plaintiffs claim that the Yehudas forged Mr. Rubinstein's signature on an agreement regarding the assignment of the Trust's interest in Oceanside to Fab Rock and an amendment to that agreement granting the Trust an option to reacquire that interest from Fab Rock. Mrs. Yehuda disputes this contention and claims that she properly exercised the option agreement by delivering written notice to Mr. Rubinstein in December 2015.

In June 2016, Plaintiffs uncovered certain improprieties about the Yehudas' management of the Hotel Property. Plaintiffs demanded that the Yehudas turn over management and operation of the Hotel Property to Mr. Rubinstein. The Yehudas refused. In August 2016, Oceanside filed a lawsuit in California to remove the Yehudas from managing and operating the Hotel Property, alleging that the Yehudas: (1) misappropriated Oceanside's hotel proceeds, (2) created an entity to seize control of Oceanside and to convince third parties that the Yehudas were the managing members of Oceanside, and (3) entered into transactions on behalf of Oceanside without its knowledge or consent. In their defense, the Yehudas argue that Fab Rock had no interest in Oceanside because the Trust exercised its option to reacquire all of Fab Rock's interest in Oceanside.

On April 28, 2017, the buyers purchased the Hotel Property from Oceanside for $13.5 million, pursuant to a warranty deed that was recorded in Broward County's public records on May 1, 2017. Mrs. Yehuda signed the deed as the sole manager of Oceanside. On the date of the sale, the Department's records reflected

3

that Mrs. Yehuda was Oceanside's sole manager. Prior to the sale, Mrs. Yehuda also executed an affidavit in connection with the closing – swearing (1) that she was Oceanside's sole manager, (2) that she was authorized to execute deeds and other documents necessary to convey real property on Oceanside's behalf, and (3) that all the prerequisites needed to authorize the Hotel Property's sale had been effectuated. After Plaintiffs learned of the transaction, they sued.

## II. APPLICABLE PRINCIPLES AND LAW

A party may move to strike pursuant to Rule 12(f) of the Federal Rules "an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). "An affirmative defense is one that admits to the complaint, but avoids liability, wholly or partly, by new allegations of excuse, justification or other negating matter." *Royal Palm Sav. Ass'n v. Pine Trace Corp.*, 716 F. Supp. 1416, 1420 (M.D. Fla. 1989) (quoting *Fla. East Coast Railway Co. v. Peters,* 72 Fla. 311, 73 So. 151 (Fla. 1916)). Thus, affirmative defenses are pleadings, and as a result, must comply with all the same pleading requirements applicable to complaints. *See Home Management Solutions, Inc. v. Prescient, Inc.,* 2007 WL 2412834, at *1 (S.D. Fla. Aug. 27, 2007). Affirmative defenses must also follow the general pleading standard of Fed. R. Civ. P. 8(a), which requires a "short and plain statement" of the asserted defense. *See Morrison v. Executive Aircraft Refinishing, Inc.*, 434 F. Supp. 2d 1314, 1318 (S.D. Fla. 2005). A defendant must admit the essential facts of the complaint and bring forth other facts in justification or avoidance to establish an affirmative defense. *See id.*

4

"The striking of an affirmative defense is a 'drastic remedy' generally disfavored by courts." *Katz v. Chevaldina*, 2013 WL 2147156, at *2 (S.D. Fla. May 15, 2013) (citations omitted); *see also Blount v. Blue Cross & Blue Shield of Florida, Inc.*, 2011 WL 672450, at *1 (M.D. Fla. Feb. 17, 2011) ("Striking a defense . . . is disfavored by the courts."); *Pandora Jewelers 1995, Inc. v. Pandora Jewelry, LLC*, 2010 WL 5393265, at *1 (S.D. Fla. Dec. 21, 2010) ("Motions to strike are generally disfavored and are usually denied unless the allegations have no possible relation to the controversy and may cause prejudice to one of the parties") (internal quotations omitted) (quoting another source).

But, a "defendant must allege some additional facts supporting the affirmative defense." *Cano v. South Florida Donuts, Inc.*, 2010 WL 326052, at *1 (S.D. Fla. Jan. 21, 2010). Affirmative defenses will be stricken if they fail to recite more than bare-bones conclusory allegations. *See Merrill Lynch Bus. Fin. Serv. v. Performance Mach. Sys.*, 2005 WL 975773, at *11 (S.D. Fla. March 4, 2005) (citing *Microsoft Corp. v. Jesse's Computers & Repair, Inc.*, 211 F.R.D. 681, 684 (M.D. Fla. 2002)). "An affirmative defense may also be stricken as insufficient if: '(1) on the face of the pleadings, it is patently frivolous, or (2) it is clearly invalid as a matter of law.'" *Katz*, 2013 WL 2147156, at *1 (citing *Blount v. Blue Cross and Blue Shield of Fla., Inc.,* 2011 WL 672450 (M.D. Fla. Feb.17, 2011)).

"Furthermore, a court must not tolerate shotgun pleading of affirmative defenses, and should strike vague and ambiguous defenses which do not respond to any particular count, allegation or legal basis of a complaint." *Morrison v. Exec.*

5

*Aircraft Refinishing, Inc.*, 434 F.Supp.2d 1314, 1318 (S.D. Fla. 2005). An affirmative defense should only be stricken with prejudice when it is insufficient as a matter of law. *See Kaiser Aluminum & Chemical Sales, Inc. v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1057 (5th Cir. 1982) (citing *Anchor Hocking Corp. v. Jacksonville Elec. Auth.*, 419 F. Supp. 992, 1000 (M.D. Fla. 1976)). Otherwise, district courts may strike the technically deficient affirmative defense without prejudice and grant the defendant leave to amend the defense. *Microsoft Corp.*, 211 F.R.D. at 684.

### III. ANALYSIS

The Owners' motion seeks to strike Plaintiffs' affirmative defenses because they lack any factual allegations and violate Rule 8. The Owners contend that twelve of Plaintiffs' fourteen affirmative defenses are merely single-sentenced recitations of legal doctrines that fail to put the Owners on notice of Plaintiffs' alleged defenses. As for the remaining two affirmative defenses – that contain one or two additional sentences – the Owners maintain that they are equally defective because they are confusing, vague, and conclusory. Accordingly, the Owners request that we strike all fourteen of Plaintiffs' affirmative defenses.

#### A. *Whether Affirmative Defenses Must Comply with Twombly*

Before we consider the merits of the Owners' motion to strike, the parties disagree as to whether *Twombly* applies to affirmative defenses. We acknowledge there is a split of authority in the Eleventh Circuit on the question presented. "Courts have developed two schools of thought regarding the pleading standard

6

required for affirmative defenses, and the Eleventh Circuit has not yet resolved the split in opinion." *Ramnarine v. CP RE Holdco 2009-1*, LLC, 2013 WL 1788503, at *1 (S.D. Fla. Apr. 26, 2013). In fact, no United States Court of Appeals has decided the question on whether the plausibility standard enunciated in *Twombly* and *Iqbal* applies to affirmative defenses "and the district courts that have considered it do not agree on an answer." *Owen v. Am. Shipyard Co., LLC*, 2016 WL 1465348, at *1 (D.R.I. Apr. 14, 2016) (citing Stephen Mayer, Note, *An Implausible Standard for Affirmative Defenses,* 112 Mich. L. Rev. 275, 276 (2013) ("More than one hundred federal cases have contemplated whether the plausibility standard outlined in [Twombly and Iqbal] applies to affirmative defenses, yet the districts remain divided, and no court of appeals has yet addressed the issue."); Justin Rand, *Tightening Twiqbal: Why Plausibility Must Be Confined to the Complaint*, 9 Fed. Cts. L. Rev. 79 (2016)).

On one hand, many courts have held that affirmative defenses are subject to the heightened pleading standard set forth in the Supreme Court cases of *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555–56 (2007) and *Ashcroft v. Iqbal,* 556 U.S. 662 (2009). *See also Home Mgmt. Sols., Inc.*, 2007 WL 2412834, at *2 ("Affirmative defenses, however, are subject to the general pleading requirements of Rule 8(a) and will be stricken if they fail to recite more than bare-bones conclusory allegations.") (citing *Merrill Lynch Bus. Fin. Serv.,* 2005 WL 975773, at *11) (citing *Microsoft Corp.,* 211 F.R.D. at 684); *see also Torres v. TPUSA, Inc.,* 2009 WL 764466 (M.D. Fla. Mar. 19, 2009) (affirmative defense stating that plaintiff fails to state a

7

claim upon which relief can be granted provides no basis on which the court can determine a plausible basis for this defense); *see also Holtzman v. B/E Aerospace, Inc.,* 2008 U.S. Dist. LEXIS 42630, at *6 (S.D. Fla. May 28, 2008) ("While Defendants need not provide detailed factual allegations, they must provide more than bare-bones conclusions. Plaintiff should not be left to discover the bare minimum facts constituting a defense until discovery"); *see also Home Mgmt. Solutions, Inc.* 2007 WL 2412834, at *3 (S.D. Fla. Aug. 21, 2007) ("Without some factual allegation in the affirmative defense, it is hard to see how a defendant could satisfy the requirement of providing not only 'fair notice' of the nature of the defense, but also 'grounds' on which the defense rests.") (brackets omitted) (quoting *Twombly,* 550 U.S. at 556 n.3).

On the other hand, some courts have held that the heightened pleading standard described in *Twombly* and *Iqbal* only applies to the allegations in complaints – not affirmative defenses. *See, e.g., Gonzalez v. Midland Credit Mgmt., Inc.*, 2013 WL 5970721, at *3 (M.D. Fla. Nov. 8, 2013); *Floyd v. SunTrust Banks, Inc.,* 2011 WL 2441744 (N.D. Ga. June 13, 2011); *Jackson v. City of Centreville,* 269 F.R.D. 661 (N.D. Ala. 2010); *Romero v. S. Waste Sys., LLC*, 619 F. Supp. 2d 1356, 1358 (S.D. Fla. 2009); *Sparta Ins. Co. v. Colareta*, 2013 WL 5588140, at *3 (S.D. Fla. Oct. 10, 2013); *Blanc v. Safetouch, Inc.,* 2008 WL 4059786, at *1 (M.D. Fla. Aug. 27, 2008). The basis for these decisions stem from the differences between Rule 8(a) – which apply to the pleading of claims – and Rules 8(b) and (c) which apply to affirmative defenses.

In debating whether *Twombly* and *Iqbal* apply to affirmative defenses, many parties rely on the language in Rules 8(a) and 8(b). Rule 8(a) requires "a short and plain statement of the claim *showing* that the pleader is entitled to relief," whereas Rule 8(b) requires that a party "*state* in short and plain terms its defenses to each claim asserted against it." Fed. R. Civ. P. 8(a) and (b) (emphasis added). Some parties have speculated that Rule 8(a) requires a party to "show" an entitlement to relief whereas Rule 8(b) merely requires a party to "state" an affirmative defense. *See Moore v. R. Craig Hemphill & Assocs.*, 2014 WL 2527162 (M.D. Fla. May 6, 2014) ("Whereas [Rule 8's] pleading provision uses, 'showing,' its response and affirmative-defense provisions use, 'state,' and *Iqbal*'s and *Twombly*'s analyses relied on 'showing'"); *see also Laferte*, 2017 WL 2537259, at *2 (S.D. Fla. June 12, 2017) ("The difference in language between Rules 8(a) and Rule 8(b) is subtle but significant."); *Owen,* 2016 WL 1465348, at *2 ("Applying different pleading standards recognizes the differences between these words; 'showing' requires some factual underpinnings to plead a plausible claim, while 'stating' contemplates that defendants can plead their defenses in a more cursory fashion."); *Ramnarine*, 2013 WL 1788503 at *3 (explaining that "the difference in the language between Rule 8(a) and Rules 8(b) and (c) requires a different pleading standard for claims and defenses"); *Smith v. Wal-Mart Stores, Inc.*, 2012 WL 2377840, at *2 (N.D. Fla. June 25, 2012) (noting that the Supreme Court in *Twombly* and *Iqbal* relied on the specific language of Rule 8(a), and finding that the plausibility requirement contained therein was inapplicable); *Floyd*, 2011 WL 2441744 at *7 ("In adopting

9

the plausibility standard, the Supreme Court relied heavily on the rule language purporting to require a 'showing' of entitlement to relief.") (citation omitted).

The Court is persuaded – by three considerations – that *both* complaints and affirmative defenses are subject to *Twombly* and *Iqbal*. First, *Iqbal's* extension of the *Twombly* pleading standard was premised on *Twombly's* holding that the purpose of Rule 8 – in general – was to give parties notice of the basis for the claims being sought. Importantly, the Supreme Court discussed Rule 8 at large and never limited its holding solely to complaints. Plaintiff's reliance on a subtle difference in wording (i.e. "show" and "state") between Rule 8(a) and 8(b) is unpersuasive because the purpose of pleading sufficient facts is to give fair notice to the opposing party that there is a plausible and factual basis for the assertion and not to suggest that it might simply apply to the case. This was the foundation for the decisions in *Twombly* and *Iqbal* and it applies equally to complaints and affirmative defenses.

Second "it neither makes sense nor is it fair to require a plaintiff to provide defendant with enough notice that there is a plausible, factual basis for . . . [his] claim under one pleading standard and then permit the defendant [or counter-defendant] under another pleading standard simply to suggest that some defense may possibly apply in the case." *Castillo v. Roche Labs. Inc.*, 2010 WL 3027726, at *2 (S.D. Fla. Aug. 2, 2010) (quoting *Palmer v. Oakland Farms, Inc.,* 2010 WL 2605179, at *4 (W.D. Va. June 24, 2010)). And third, "when defendants are permitted to make "[b]oilerplate defenses," they "clutter [the] docket; they create unnecessary work, and in an abundance of caution require significant unnecessary

10

discovery." *Castillo,* 2010 WL 3027726, at *3 (citation and internal quotation marks omitted).

When coupling the three considerations discussed above with the fact that a majority of courts have agreed with this position, we hold that there is no separate standard for complaints and affirmative defenses in connection with Rule 8. *See, e.g.*, *Barnes v. AT & T Pension Ben. Plan-Nonbargained Program*, 718 F. Supp. 2d 1167, 1171–72 (N.D. Cal. 2010) ("While neither the Ninth Circuit nor any other Circuit Courts of Appeals has ruled on this issue, the vast majority of courts presented with the issue have extended *Twombly's* heightened pleading standard to affirmative defenses.") (citing *CTF Dev., \*1172 Inc. v. Penta Hospitality, LLC,* 2009 WL 3517617, at *7–8 (N.D. Cal. Oct. 26, 2009) ("Under the *Iqbal* standard, the burden is on the defendant to proffer sufficient facts and law to support an affirmative defense"); *see also Hayne v. Green Ford Sales, Inc.*, 263 F.R.D. 647, 650 n.15 (D. Kan. 2009) (citing nine cases applying *Twombly* and *Iqbal* to the pleading of affirmative defenses)). We will therefore determine whether Plaintiffs' affirmative defenses comply with the pleading requirements in *Twombly* and *Iqbal.*

### B. *Whether Plaintiffs' Affirmative Defenses Comply with Twombly*

Having established that *Twombly* applies to affirmative defenses, we agree with the Owners that almost all of Plaintiffs' defenses are vague and conclusory. Twelve of the affirmative defenses are merely one sentence long and many of them fail to describe in any way how a defense applies. The lack of factual support runs rampant through many defenses, including the first (failure to state a claim),

11

second (collateral source setoff), third (waiver/estoppel), fourth (unclean hands), sixth (limitation of liability), eighth (litigation privilege), ninth (failure to mitigate), eleventh (failure to satisfy conditions precedent), twelfth (qualified privileged), thirteenth (laches), and fourteenth (statute of limitations) affirmative defenses. Each of these defenses in some respects lacks the necessary factual support and fails to comply with the requirements of Rule 8. While the Court will not articulate how each of them is defective – to avoid being repetitive – a few examples are instructive.

The first affirmative defense is the most appropriate place to start because it fails for two important reasons. The defense states that "[t]he counts alleged by Buyers for statutory liability for damages, slander of title, and quiet title fail to state causes of action under Florida law." [D.E. 385 at 8]. While this sentence recites several legal doctrines, it completely fails to explain how they apply to the facts of this case and this alone renders it defective. *See Perlman v. Wells Fargo Bank, N.A.*, 2014 WL 4449602, at *2 (S.D. Fla. Sept. 10, 2014) (striking affirmative defense that "state legal doctrines or terms, but neither state how or why such defenses might apply to Plaintiff's claims, nor state facts in support of their application."). The defense fails for a second reason because "it is no more than a recitation of the standard for dismissal under Rule 12(b)(6) and "is a bare-bones conclusory allegation that fails to notify [the Owners] of the deficiencies in the [counterclaims]." *Valdez v. Smith & Deshields, Inc.*, 2008 WL 4861547, at *2 (S.D. Fla. Nov. 10, 2008) (citing *Renalds v. S.R.G. Restaurant Group*, 119 F. Supp 2d 800,

12

803-04 (N.D. Ill. 2000) (finding that a simple recitation of the standard for dismissal under Rule 12(b)(6) is an abdication of a party's responsibility for alleging facts demonstrating an entitlement to relief); *Merrill Lynch Bus. Fin. Servs., Inc. v. Performance Mach. Sys. U.S.A., Inc.*, 2005 WL 975773, at *11 (S.D. Fla. Mar. 4, 2005) (same). Accordingly, the first affirmative defense is stricken for two independent reasons.

The second affirmative defense states that "[a]ny recovery by [the] Buyers should be reduced and/or setoff by any collateral sources of indemnity or recovery from any parties or non-parties who are responsible for all or a portion of Buyers' alleged damages." [D.E. 385 at 8]. The problem with this defense is that it "merely states a legal doctrine, set-off, without any factual context to this action," and fails to meet the requirement that a "[r]espondent must plead some facts to support this legal conclusion." *Oriole Gardens Condo. Ass'n I v. Aspen Specialty Ins. Co.*, 2012 WL 864629, at *2 (S.D. Fla. Mar. 13, 2012). Plaintiffs suggest that, while the defense might be defective, it should nonetheless remain because the underlying complaint provides the necessary factual support to color Plaintiffs' theory of damages. But, "it is inappropriate for [Plaintiffs] to place the burden on [the Owners] and on the Court to sift through 'pages' of allegations to determine [what Plaintiffs] might have intended to form the basis of each of [their] defenses." *Certain Interested Underwriters at Lloyd's, London v. AXA Equitable Life Ins. Co.*, 2013 WL 3892956, at *4 (S.D. Fla. July 26, 2013). The burden is instead on Plaintiffs to provide the relevant facts and to state them as part of each defense.

Otherwise, Defendants would have no choice but to assume or guess as to how a specific defense applies to the facts of a case. Because the burden is on Plaintiffs to show how this defense applies and Plaintiffs failed to meet that burden, the second affirmative defense cannot stand.

Plaintiffs' third and fourth affirmative defenses fail for many of the same reasons because there is no indication on how these legal doctrines apply to the facts of this case. The third affirmative defense alleges that the "Buyers' claims are barred, in whole or in part, by the doctrine of waiver and/or estoppel." [D.E. 385 at 8]. Yet, to allege an affirmative defense of waiver or estoppel, a party must allege and provide factual support for each of their respective elements. *See Noveshen v. Bridgewater Assocs., LP*, 2016 WL 3902580, at *2 (S.D. Fla. Feb. 25, 2016) ("[W]aiver, [and] estoppel . . . are equitable defenses that must be pled with the specific elements required to establish the defense.") (quoting *Marina Bartashnik v. Bridgeview Bancorp, Inc.*, 2005 WL 3470315, at *4 (N.D. Ill. Dec. 15, 2005)). Because no element is even mentioned in the third affirmative defense, it does not include enough factual support to withstand a motion to strike.

The fourth defense is inadequate because it states that the "Buyers' claims are barred, in whole or in part, because they have unclean hands." [D.E. 385 at 8]. This defense fails because it lacks any facts that place the Owners on notice on how they have unclean hands. *See Colon v. Fource Hotel Properties, LLC*, 2011 WL 13302684, at *1 (M.D. Fla. Jan. 21, 2011) ("Defendants must include facts that place the Plaintiff on adequate notice of the nature of the unclean hands defense, and the

14

grounds upon which it rests.") (citations omitted). And without any supporting facts, the fourth affirmative defense is too conclusory to suffice under Rule 8.

In sum, eleven of Plaintiffs' affirmative defenses are inadequate because they lack the necessary factual support to give notice of how each defense applies to the facts of this case. Plaintiffs repeatedly emphasize that the parties have litigated this case for more than two years and that the Owners know, or should know, the basis for Plaintiffs' defenses. But, Plaintiffs rely on no legal authority that allows a party to bypass the requirements of Rule 8 on an inference that the opposing party should be knowledgeable about the basis of another party's claims. The Owners' motion to strike must therefore be **GRANTED without prejudice** as to affirmative defenses 1-4, 6, 8-9, and 11-14 for a failure to include the necessary factual support as required under Rule 8.

Having articulated how eleven of Plaintiffs' affirmative defenses are defective due to a lack of factual support, we turn to the fifth (good faith), seventh (truth), and tenth (statutory compliance) affirmative defenses.[2] The Owners seek to strike

---

[2] The fifth, seventh, and tenth affirmative defenses state the following:

> The lien recorded on June 5, 2017 is permitted under Florida law. Plaintiffs had a good faith belief that they were entitled to record the lien.
> . . .
> The lien recorded on June 5, 2017 is permitted under Florida law and proper based on Plaintiffs' rights to the Hotel Property and the alleged communication to a third party was truthful.
> . . .
> Plaintiffs state that they have fully complied with Florida Statutes, Chapters 605 and 65, in addition to all applicable rules, state and Federal regulations.

these defenses because they are confusing and merely allege a defect in the Owners' counterclaims.

Based on our review, these defenses are not pleaded as affirmative defenses. By definition, "an affirmative defense is something that, if proven, will reduce or eliminate a plaintiff's recovery even if the plaintiff established a prima facie case." *F.D.I.C. v. Stovall*, 2014 WL 8251465, at *2 (N.D. Ga. Oct. 2, 2014). "For example, responding that plaintiff's complaint fails to state a claim upon which relief may be granted—the standard for dismissal under Rule 12(b)(6)—or that defendants did not owe plaintiff a duty does not raise an affirmative defense." *F.D.I.C. v. Stovall*, 2014 WL 8251465, at *2 (N.D. Ga. Oct. 2, 2014) (citing *In re Rawson Food Serv., Inc.*, 846 F.2d 1343, 1349 (11th Cir. 2010) ("A defense which points out a defect in the plaintiff's prima facie case is not an affirmative defense.")).

Here, the "affirmative defenses" merely identify defects in the Owners' counterclaims rather than reasons that explain how Plaintiffs are not liable. And it is well settled that "[a] defense which points out a defect in the . . . prima facie case is not an affirmative defense." *In re Rawson Food Serv., Inc.*, 846 F.2d 1343, 1349 (11th Cir. 1988); *see also Roberge v. Hannah Marine Corp.*, 124 F.3d 199, 199 (6th Cir. 1997) ("An affirmative defense . . . does not negate the elements of the plaintiff's claim, but instead precludes liability even if all of the elements of the plaintiff's claim are proven."). These defenses are sometimes referred to as "negative" defenses because they are simply an attack on a party's prima facie case. *See, e.g., Mister v. Dart*, 2014 WL 2922830, at *2 (N.D. Ill. June 26, 2014) (citing

16

*Riemer v. Chase Bank USA, N.A.*, 274 F.R.D. 637, 639 (N.D. Ill. 2011) ("[A] negative defense is an attack on a plaintiff's prima facie case.")). As the Sixth Circuit explained in *Ford Motor Co. v. Transport Indemnity Co.*, an affirmative defense presents an extraneous reason that helps a defendant avoid liability:

> An affirmative defense raises matters extraneous to the plaintiff's prima facie case; as such, they are derived from the common law plea of 'confession and avoidance.' On the other hand, some defenses negate an element of the plaintiff's prima facie case; these defenses are excluded from the definition of affirmative defense in Fed. R. Civ. P. 8(c).

795 F.2d 538, 546 (6th Cir. 1986) (internal citations omitted).

Yet, in this case, it is entirely unclear how the the fifth, seventh, and tenth affirmative defenses meet this standard. For example, the seventh affirmative defense states (1) that Plaintiffs recorded a lien on June 5, 2017, (2) that this was permitted under Florida law, and (3) that a communication to a third party was truthful. While we do not dispute that these might be relevant facts, it is unclear as to how this helps Plaintiffs avoid liability. The same is true of the fifth affirmative defense because Plaintiffs allege that they recorded a lien on June 5, 2017 and that they had a good faith belief to record it. Nothing in this statement negates Defendants' counterclaims. This is not to say that the doctrine of good faith can never arise to an affirmative defense (and we reserve that question for another day), it merely means that the allegations presented are inadequate to show how Plaintiffs can avoid liability. And it appears that both parties agree that the tenth affirmative defense constitutes a mere denial because it states that Plaintiffs complied with state and federal law.

Accordingly, the fifth, seventh, and tenth affirmative defenses are denials – as opposed to affirmative defenses – and although we could strike them as inadequate, there is no prejudice to the Owners in allowing them to remain. *See Bruce v. Ocwen Loan Servicing, LLC*, 2012 WL 4867224, at *2 (M.D. Fla. Oct. 15, 2012) ("While these defenses appear to be denials of Plaintiff's claims, rather than true affirmative defenses, the Court finds that there is no prejudice to Plaintiff by allowing them to remain."); *see also Tomason v. Stanley*, 297 F.R.D. 541, 546 (S.D. Ga. 2014) (finding that a claim did not constitute an affirmative defense but denying the motion to strike). Therefore, the Owners' motion to strike the fifth, seventh, and tenth affirmative defenses is **DENIED**.

## IV. CONCLUSION

For the foregoing reasons, it is hereby **ORDERED AND ADJUDGED** that the Owners' motion to strike [D.E. 387] is **GRANTED in part** and **DENIED in part**.

A. The Owners' motion to strike affirmative defenses 1-4, 6, 8-9, and 11-14 is **GRANTED** without prejudice. Any amended answer shall be filed within fourteen (14) days from the date of this Order.

B. The Owners' motion to strike affirmative defenses 5, 7, and 10 is **DENIED**.

**DONE AND ORDERED** in Chambers at Miami, Florida, this 13th day of June, 2019.

/s/ *Edwin G. Torres*
EDWIN G. TORRES
United States Magistrate Judge